UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

REYNALDO PABON,

                            Petitioner,

                                                           DECISION AND ORDER

-vs-

                                                           6: 20-CV-6136 CJS

SUPERINTENDENT, MOHAWK
CORRECTIONAL FACILITY, [1]

                            Respondent.
_____

# INTRODUCTION

Petitioner Reynaldo Pabon ("Pabon" or "Petitioner") brings this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction in New York State Supreme Court, Monroe County, upon his plea of guilty to Arson in the Second Degree, New York Penal Law § 150.15, for which he was sentenced, as a second violent felony offender,[2] to a determinate prison sentence of thirteen years. Pabon contends that the ineffectiveness of his counsel rendered his guilty plea unintelligent and involuntary. For the reasons explained below, the petition for a writ of habeas corpus is denied.

# BACKGROUND

The reader is presumed to be familiar with the facts and procedural history of this action. Briefly, on October 14, 2014, Pabon was driving in the City of Rochester and was stopped by an officer of the Rochester Police Department, who determined that Pabon had an outstanding

---

[1] The originally-named respondent in this action was Mark Royce, Superintendent of Green Haven Correctional Facility, where Petitioner was housed when he filed the petition. However, since Petitioner is presently confined at Mohawk Correctional Facility the Court amends the caption to indicate that the proper respondent is the Superintendent at Mohawk. The Clerk of the Court is directed to amend the caption accordingly and terminate Royce as a party.

[2] The Second Violent Felony Offender Information indicated that Pabon had previously been convicted, on August 30, 2002, upon his plea of guilty, of Burglary in the Second Degree, for which he was sentenced to six years in prison.

bench warrant from Rochester City Court relating to a petit larceny charge. More specifically, Pabon had been sentenced on the petit larceny charge to a one-year conditional discharge that included "work weekends," but had failed to attend his court-mandated work weekends, which resulted in the issuance of the bench warrant. Additionally, at that time Pabon was the subject of a "wanted for questioning flyer" that had been issued on July 14, 2014, by the Rochester Police Department ("RPD") in connection with two arson crimes and a series of false emergency calls made to the Rochester Fired Department.[3] The officer who made the traffic stop observed both that Pabon had an outstanding bench warrant and that he was wanted for questioning by RPD Major Crimes.[4]

Pabon was arrested on the bench warrant and transported to the Monroe County Public Safety Building, where he waived his *Miranda* rights and agreed to speak with two police detectives, who began by asking Pabon whether he "knew anything about a fire at 447 Thurston Road, where he used to live." Indeed, as mentioned earlier, the police suspected Pabon in a series of crimes involving two different arsons and a string of false fire calls to the Rochester Fire Department. In that regard, both of the arson fires had been set in locations connected to Pabon, and the six false reports to the Fire Department had reported fires at the residence of Pabon's former girlfriend.[5] Moreover, police had already managed to identify Pabon's voice on the 911 recordings of the false fire calls,[6] and to obtain video evidence placing Pabon at the scene of one of the fires.

---

[3] State Court Record at p. 169, ECF No. 15-2 at p. 169.
[4] State Court Record at p. 077, ECF No. 15-2 at p. 77.
[5] *See*, State Court Record at p. 136, ECF No. 15-2 at p. 136 (Referring to Pabon's admissions to the police about setting the fires and making the false reports).
[6] State Record at p. 168, ECF No. 15-2 at p. 168. (A witness familiar with Pabon identified the voice on the calls as belonging to Pabon).

Pabon admitted to the investigators that he had started the fires and made the false reports. Pabon admitted, for example, that he had set the fires because, in both instances, he had wanted to move to different locations, and that he had falsely reported fires at his ex-girlfriend's home because he hoped that there would be an evacuation of her residence by the fire department that would provide him with an opportunity to speak to the woman.[7] Pabon indicated that he thought he had made three such false reports, not six, though he also indicated that he had been using drugs at the time of the crimes and not thinking clearly.[8] At the conclusion of the interview Pabon was charged with arson and with falsely reporting incidents.

On October 24, 2014, a Monroe County Grand Jury returned an eight-count indictment against Pabon, charging him with one count of Arson in the Second Degree, one count of Arson in the Third Degree, and six counts of Falsely Reporting an Incident in the Second Degree. Count One of the Indictment charged Pabon with committing arson at an occupied building, 477 Thurston Road, in the City of Rochester, on April 25, 2014. Count Two accused Pabon of starting a fire and damaging a building on December 28, 2013, and Counts Three through Eight charged Pabon with falsely reporting fires on October 7, 2012, October 10, 2012, October 17, 2012, August 21, 2013, June 28, 2014, and July 3, 2014, respectively, all in the City of Rochester. The record indicates that Pabon faced up to fifty years in prison if convicted of all charges in the Indictment.

Pabon was represented on the charges by Jill Paperno ("Paperno"), a member of the Monroe County Public Defender's Office. Paperno negotiated a plea agreement in which Pabon would plead guilty to Count I of the Indictment in exchange for a sentence of imprisonment of thirteen years, followed by five years of supervised release. Pabon accepted the plea offer and

---

[7] State Record at pp. 169-172, ECF No. 15-2 at pp. 169-172.
[8] State Court Record at p. 125, ECF No. 15-2 at p. 125.

on December 2, 2014, pled guilty to the top count of the Indictment before the Honorable Francis Affronti, Monroe County Supreme Court Justice. On January 28, 2015, Justice Affronti sentenced Pabon to thirteen years in prison, with a 5-year period of post-release supervision.

Pabon waived his right to appeal as part of his plea agreement, but nevertheless filed a notice of appeal, though he did not immediately perfect an appeal.[9] Instead, on January 26, 2016, Pabon, proceeding *pro se*, filed a collateral attack pursuant to CPL § 440.10. The application raised the following arguments: 1) under the New York State Constitution, Art. I, § 6, Pabon's conviction was jurisdictionally defective, since Count One of the Indictment incorrectly stated that the arson occurred at 477 Thurston Road, when it actually occurred at 447 Thurston Road, rendering Pabon actually innocent of the crime to which he pled guilty;[10] 2) Pabon's guilty plea was not knowingly, intelligently or voluntarily made, since he did not understand the rights that he was giving up by pleading guilty; and 3) Pabon's guilty plea was not knowingly, intelligently or voluntarily made, since it was obtained in violation of his right to effective assistance of counsel under the New York State and Federal Constitutions.

In support of the collateral attack, Pabon alleged that Paperno had "coerced" him into accepting the plea offer, by reiterating to him that he could face up to forty years in prison if convicted of the charges in the Indictment.[11] Pabon further alleged that Paperno had been ineffective in the following respects: 1) she failed to investigate whether there had been probable cause for the traffic stop, or whether Pabon was already represented by counsel on the petit

---

[9] The record contains a reference to Pabon having filed a notice of appeal, but it does not appear that a direct appeal was perfected prior to his § 440.10 application. *See*, State Record at p. 091, ECF No. 15-2 at p. 91. Instead, Pabon later requested leave to consolidate direct appeal issues with his appeal of the denial of his § 440.10 motion

[10] It is undisputed that in both Count I of the Indictment and during Pabon's plea colloquy the scene of the arson was incorrectly described as 477 Thurston Road instead of 447 Thurston Road.

[11] As already noted, the prosecution maintained that Pabon, who had a lengthy criminal record, was actually facing up to fifty years in prison if convicted of all charges in the Indictment. State Court Record at p. 146, ECF No. 15-2 at p. 146.

larceny charge when the detectives interviewed him; 2) she failed to investigate the facts of the case, which resulted in her failing to understand that Pabon had resided at 447 Thurston Road and not 477 Thurston Road; 3) she failed to advise Pabon that he had a constitutional right against self-incrimination, and never told him that he could challenge the admissibility of his statements to the detectives.  Regarding Paperno's alleged ineffectiveness, Pabon stated in pertinent part:

> Not only did counsel not apprise the defendant of the plea consequences in forfeiting this right [(his privilege against self-incrimination)], but counsel never apprised the defendant pre-plea, that he could challenge the admissibility of his alleged confession (statement) in a pretrial hearing.  Had counsel of explained [sic] to the defendant that he could challenge his alleged statement, before plea and before trial, then, the defendant would not have plead[ed] guilty and would have proceeded to trial. . . .  Counsel failed miserably, in informing the defendant [sic], before any plea of guilt, that, the defendant could motion the court and challenge the alleged self-incriminating statement based on three (3) colorable bas[e]s, which were: (1) illegal traffic stop; (2) right to counsel; and (3) involuntary.

State Court Record, ECF No. 15-2 at pp. 49-50.

On April 20, 2016, Supreme Court, Monroe County, denied the § 440.10 motion. Supreme Court held that to the extent Pabon was claiming that his conviction was jurisdictionally defective and/or that he was actually innocent, the claim was procedurally barred, since it was based on matters of record that could be raised in a direct appeal.  Supreme Court further held that Pabon's contention that his waiver of his *Miranda* rights was ineffective, based on New York's indelible right to counsel, lacked merit since the petit larceny charge on which he claimed to have been represented by counsel was not still "pending" at the relevant time. *See*, Decision Denying 440.10 Motion, State Record at p. 092, ECF No. 15-2 at p. 91 ("Defendant did not have a 'pending' charge for which he was represented by counsel because it was previously concluded by conviction.  When the prior charge has been disposed of by conviction, the

5

indelible right to counsel disappeared and the defendant was capable of waiving counsel on the new charge.") (citations and internal quotation marks omitted).  Because of that, Supreme Court further held, Pabon's claim that his attorney was ineffective for failing to challenge the admissibility of his statements also lacked merit:

> Essentially, therefore, Defendant's assertions distill to a claim that counsel was ineffective for failing to make a suppression motion in violation of his right to counsel on a prior but now concluded, unrelated charge.  To prevail on said ground, it is incumbent on defendant to demonstrate the absence of strategic or other legitimate explanations for counsel's failure to make such a motion.  Stated differently, defendant must show that the particular motion, if made, would have been successful and that defense counsel's failure to make that motion deprived him of meaningful representation.  Absent same, it is presumed that counsel acted in a competent matter and exercised professional judgment in not pursuing a suppression hearing.  <u>Counsel's failure to move for suppression does not constitute ineffective assistance because the motion would have been denied, since as stated, Defendant had been convicted of the previous matter</u>.  Clearly, defense counsel's representation of the Defendant throughout the latter's proceeding is concluded to be consistent with a legitimate and ultimately successful strategy.

State Record at p. 092, ECF No. 15-2 at p. 92 (emphasis added; citations and internal quotation marks omitted).

On appeal from that decision, Pabon, with the assistance of counsel, again focused his argument on the alleged violation of his indelible right to counsel under New York State law, and on his attorney's alleged ineffectiveness in failing to seek suppression of his statements on that basis.[12]  In that regard, Pabon acknowledged that when he made his statements to the police on October 14, 2014, he had already been sentenced on the earlier charge of petit larceny.  Pabon further admitted that under New York law, when a "prior charge has been disposed of by

---

[12] The appeal raised three issues: 1) ineffective assistance of counsel, based on counsel's failure to attempt to suppress Pabon's statements to police under New York's "indelible right to counsel" rule; 2) Pabon's waiver of appeal was ineffective; and 3) Pabon's sentence was harsh and excessive.

6

dismissal or conviction, the indelible right to counsel disappears."[13]  However, he maintained that since the sentence that he received on the petit larceny charge had been a one-year conditional discharge, he was still under the criminal court's jurisdiction, meaning that the petit larceny charge was not "disposed of," when he made the subject statements to the police, and that the indelible right to counsel therefore applied to him.

On June 28, 2019, a panel of the New York State Supreme Court, Appellate Division Fourth Department, unanimously affirmed Supreme Court's determination.  In doing so, the appellate court rejected Pabon's contention that Paperno had been ineffective for failing to move to suppress his statements to the police, stating in pertinent part:

> Even assuming, *arguendo*, that defendant's claim of ineffective assistance of counsel is neither forfeited by his guilty plea nor precluded by his valid waiver of the right to appeal (*see generally People v Mangarillo*, 152 AD3d 1061, 1064 n 2 [3d Dept 2017]), we nevertheless conclude that it lacks merit. Notably, both the Second and Third Departments have rejected the exact theory regarding the indelible right to counsel that defendant faults defense counsel for overlooking (*see People v Brown*, 174 AD2d 842, 842 [3d Dept 1991]; *People v Heller*, 99 AD2d 787, 788 [2d Dept 1984]; *see also People v Jordan*, 143 AD2d 367, 368-369 [2d Dept 1988], lv denied 73 NY2d 856 [1988]), and this Court has rejected an argument very similar to those rejected in *Brown* and *Heller* (*see People v Brant*, 277 AD2d 1022, 1022 [4th Dept 2000], *lv denied* 96 NY2d 756 [2001]). Defendant identifies no authority to support his current assertion that the police questioned him in violation of his indelible right to counsel, and the premise underlying his attempt to distinguish *Heller* and its progeny has been explicitly rejected by the Court of Appeals (*see People v Colwell*, 65 NY2d 883, 885 [1985]; *see also People v Robles*, 72 NY2d 689, 695 [1988]; People v Marshall, 98 AD2d 452, 461-463 [2d Dept 1984]). <u>Thus, because the governing law was unfavorable to a suppression motion on the precise theory upon which defendant now relies, defense counsel's failure to file such a motion cannot be deemed ineffective</u> (*see People v Brunner*, 16 NY3d 820, 821 [2011]; *People v Bradford*, 118 AD3d 1254, 1255-1256 [4th Dept 2014], *lv denied* 24 NY3d 1082 [2014]).

*People v. Pabon*, 173 A.D.3d 1847, 1847–48, 104 N.Y.S.3d 471 (2019) (emphasis added).

---

[13] State Court Record at p. 117, ECF No. 15-2 at p. 117.

Pabon applied for leave to appeal to the New York Court of Appeals, on the issue of whether Paperno provided ineffective assistance of counsel related to the statements allegedly taken in violation of the indelible right to counsel.[14]  However, on September 23, 2019, the Court of Appeals denied leave to appeal.

On February 27, 2020, Pabon filed the subject habeas petition, proceeding *pro se*.  The petition purports to state four separate claims, designated as "A. Ground One," "B. Ground One," "B. Ground Two," and "C. Ground Three."   However, together, the claims all essentially indicate that Pabon's conviction was obtained in violation of his Sixth Amendment right to effective representation of counsel, inasmuch as Paperno advised him to plead guilty, rather than attempting to suppress the statements that Pabon made to the police, that were allegedly taken in violation of his indelible right to counsel under New York law.  In support of the claim, Pabon reiterates the argument rejected by the state courts, namely, that when he made the inculpatory statements concerning the arson, he was represented by an attorney on an unrelated petit larceny charge, making it impossible, under New York State law, for him to validly waive his right to counsel, with regard to the arson charges, without the attorney present.  Pabon therefore maintains that although he waived his *Miranda* rights before making the inculpatory statements, the statements were nevertheless involuntary as a matter of New York State law.  Consequently, Pabon contends that Paperno was ineffective for failing to seek suppression of the statements on that basis, which prevented him from making a knowing, intelligent and voluntary guilty plea.

Respondent opposes every aspect of the application, but essentially points out that that state court's denial of Pabon's ineffective assistance claim on the merits was neither contrary to

---

[14] State Court Record at pp. 151-152, ECF No. 15-2 at pp. 151-152.  Respondent contends that Pabon's submission to the Court of Appeals only raised the issue of whether Pabon's indelible right to counsel was violated.  However, the submission asserted that Pabon's statements to the police "should have been suppressed, but for counsel's failure to bring the motion." *Id*.

nor an unreasonable application of, clearly established Federal law, nor a decision that was based on an unreasonable determination of the facts in light of the evidence presented. More specifically, Respondent indicates that Paperno was not ineffective for failing to file a suppression motion that had no chance of success.

The Court has considered the arguments of the parties and the entire record, and finds, for the reasons discussed below, that the habeas petition must be denied.

## DISCUSSION

### Evidentiary Hearing Not Required

Pursuant to Rule 8 of Rules Governing Habeas Corpus cases under Section 2254 in the United States District Courts and upon review of the answer, transcript and record, the Court determines that an evidentiary hearing is not required.

### Section 2254 Principles

Petitioner brings this habeas corpus petition pursuant to 28 U.S.C. § 2254, and the general legal principles applicable to such a claim are well settled.

> As amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") and interpreted by the Supreme Court, 28 U.S.C. § 2254—the statutory provision authorizing federal courts to provide habeas corpus relief to prisoners in state custody—is "part of the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions." *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 787, 178 L.Ed.2d 624 (2011). A number of requirements and doctrines . . . ensure the centrality of the state courts in this arena. First, the exhaustion requirement ensures that state prisoners present their constitutional claims to the state courts in the first instance. *See id*. (citing 28 U.S.C. § 2254(b)). Should the state court reject a federal claim on procedural grounds, the procedural default doctrine bars further federal review of the claim, subject to certain well-established exceptions. *See generally Wainwright v. Sykes*, 433 U.S. 72, 82–84, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). If the state court denies a federal claim on the merits, then the provisions of § 2254(d) come into play and prohibit federal habeas relief unless the state court's decision was either: (1) "contrary to, or

involved an unreasonable application of, clearly established Federal law," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court." 28 U.S.C. § 2254(d)(1)-(2). Finally, when conducting its review under § 2254(d), the federal court is generally confined to the record before the state court that adjudicated the claim. *See Cullen v. Pinholster*, —— U.S. ——, 131 S.Ct. 1388, 1398–99, 179 L.Ed.2d 557 (2011).

*Jackson v. Conway*, 763 F.3d 115, 132 (2d Cir. 2014). As just mentioned, regarding claims that were decided on the merits by state courts,

> a federal court may grant habeas corpus relief to a state prisoner on a claim that was adjudicated on the merits in state court only if it concludes that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2).
>
> A state court decision is contrary to clearly established Federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to the Supreme Court's result.
>
> A state court decision involves an unreasonable application of clearly established Federal law when the state court correctly identifies the governing legal principle but unreasonably applies it to the facts of the particular case. To meet that standard, the state court's decision must be so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement. It is well established in this circuit that the objectively unreasonable standard of § 2254(d)(1) means that a petitioner must identify some increment of incorrectness beyond error in order to obtain habeas relief.

*Santana v. Capra*, No. 15-CV-1818 (JGK), 2018 WL 369773, at *7–8 (S.D.N.Y. Jan. 11, 2018) (Koeltl, J.) (citations and internal quotation marks omitted).

When applying these standards,

10

> [t]he state court's findings of fact are presumed to be correct unless the petitioner can rebut this presumption by clear and convincing evidence[,] [28 U.S.C.] § 2254(e)(1)[, and] [t]he petitioner bears the ultimate burden of proving by a preponderance of the evidence that his [federal] constitutional rights have been violated. *Jones v. Vacco*, 126 F.3d 408, 415 (2d Cir.1997).

*Epps v. Poole*, 687 F.3d 46, 50 (2d Cir. 2012), as amended (Aug. 9, 2012).

"A claim that a state conviction was obtained in violation of state law is not cognizable in the federal court." *Howard v. Walker*, 406 F.3d 114, 121 (2d Cir. 2005) (citing *Estelle v. McGuire*, 502 U.S. 62, 68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) and *Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir.1998)); *see also, Guerrero v. LaManna*, 325 F. Supp. 3d 476, 483 (S.D.N.Y. 2018) ("The role of federal courts reviewing habeas petitions is not to re-examine the determinations of state courts on state law issues, but only to examine federal constitutional or statutory claims. 28 U.S.C. § 2254(a); *see Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). Federal courts deciding habeas petitions do not serve as appellate courts to review state court decisions of state law claims. Their purpose instead is to review whether the circumstances surrounding the petitioner's detention 'violate fundamental liberties of the person, safeguarded against state action by the Federal Constitution.' *Townsend v. Sain*, 372 U.S. 293, 311–312, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). Habeas petitions may not simply repackage state law claims, which have previously been found to be meritless, in order to obtain review. *DiGuglielmo v. Smith*, 366 F.3d 130, 136 (2d Cir. 2004).").

Ineffective Assistance of Counsel

Pabon here maintains that his guilty plea was the result of ineffective assistance of counsel, inasmuch as Paperno should have advised him that his statements to the police could be suppressed under New York's indelible right to counsel rule. Respondent opposes the application and contends, in pertinent part, that the state courts "reasonably – and correctly –

11

concluded that Petitioner's indelible right to counsel was not violated and, therefore, there was no basis for counsel to move to suppress Petitioner's statements on that ground."

The applicable general standard for an ineffective assistance claim that was denied on the merits by a state court is well settled:

> "To succeed on a claim of ineffective assistance of counsel in violation of the Sixth Amendment ... a defendant must demonstrate (1) that his attorney's performance 'fell below an objective standard of reasonableness,' and (2) that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Wilson v. Mazzuca*, 570 F.3d 490, 502 (2d Cir. 2009) (citations omitted) (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). "The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Fischer v. Smith*, 780 F.3d 556, 561 (2d Cir. 2015) (internal quotation marks omitted).

*Kelley v. Larkin*, 680 F. App'x 5, 7 (2d Cir. 2017); *see also, Riley v. Noeth*, 802 F. App'x at 10 ("Taking both AEDPA and *Strickland* together, the question when reviewing a state court's *Strickland* determination is thus "not whether a federal court believes the state court's determination was incorrect[,] but [rather] whether that determination was [objectively] unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007). As such, to justify relief under § 2254(d)(1), [the habeas petitioner is] required to establish the state court's effectiveness of counsel determination 'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.' [*Harrington v.*] *Richter*, 562 U.S. at 103, 131 S.Ct. 770.").

The *Strickland* standard applies to ineffective assistance claims involving the plea-bargaining process. *See, Missouri v. Frye*, 566 U.S. 134, 140, 132 S. Ct. 1399, 1405, 182 L. Ed. 2d 379 (2012) ("[C]laims of ineffective assistance of counsel in the plea bargain context are

governed by the two-part test set forth in *Strickland*.") (citation omitted). As relevant here, "[i]f a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it." *Lafler v. Cooper*, 566 U.S. 156, 168, 132 S. Ct. 1376, 1387, 182 L. Ed. 2d 398 (2012); *see also, Padilla v. Kentucky*, 559 U.S. 356, 364, 130 S. Ct. 1473, 1480–81, 176 L. Ed. 2d 284 (2010) ("Before deciding whether to plead guilty, a defendant is entitled to the effective assistance of competent counsel."). "Ineffective assistance of counsel during plea negotiations can invalidate a guilty plea and make granting withdrawal appropriate, to the extent that the counsel's deficient performance undermines the voluntary and intelligent nature of defendant's decision to plead guilty." *United States v. Arteca*, 411 F.3d 315, 320 (2d Cir. 2005) (citations omitted).

Here, accepting as true Pabon's assertion that Paperno never discussed with him the potential of moving to suppress his statements based on New York's indelible right to counsel rule, such fact does not establish either that Paperno's performance was deficient or that Pabon was prejudiced thereby. In that regard, the New York State courts determined that Pabon's theory, that the indelible right to counsel applied to him even though he had already been sentenced on the petit larceny charge, lacked merit. As indicated earlier, it is not this Court's function in a § 2254 habeas proceeding to review the New York court's ruling on that point of state law, and, even if it were, Pabon has not demonstrated that that such ruling was erroneous under New York law in any event.

That being so, Pabon has not shown that Paperno performed deficiently, either in advising him to accept the plea offer, or in failing to move to suppress the statements. *See, e.g., United States v. Nersesian*, 824 F.2d 1294, 1322 (2d Cir. 1987) ("[F]or purposes of effective assistance, not every possible motion need be filed, but rather, only those having a solid foundation. Counsel certainly is not required to engage in the filing of futile or frivolous motions.") (citations

13

omitted). Nor, for that same reason, has Pabon shown any prejudice flowing from Paperno's performance. *See, Hayes v. Lee*, No. 11-CV-1365 KMK PED, 2015 WL 5943677, at *36 (S.D.N.Y. Oct. 13, 2015) ("Petitioner cannot show that counsel's failure to raise meritless arguments affected the outcome of the proceeding.") (collecting cases).

Indeed, given the apparent lack of legal merit to Pabon's suppression theory under New York law and the apparent strength of the prosecution's case against him (even without his confession), there is no reasonable probability that if Pabon had rejected the plea offer and proceeded to trial he would have obtained a result more favorable than what he achieved via the plea deal negotiated by Paperno. Rather, the record indicates that Pabon's negotiated 13-year sentence was significantly less than what he could have faced after conviction at trial. *See, e.g.*, State Court Record at p. 144, ECF No. 15-2 at p. 144 ("Defendant's criminal history spans twenty-two years beginning in 1992. A review of the PSI reveals that Defendant pleaded guilty on eight previous occasions to crimes ranging in severity from misdemeanors to felonies."); *see also, id*. at pp. 145-146 ("The guilty plea was allowed to satisfy the indictment that charged the defendant with the arson of more than one location and multiple counts of falsely reporting an incident, thus eliminating the possibility of consecutive terms of imprisonment comprised of both determinate and indeterminate sentences, the maximum of which was 50 years in prison if convicted of all counts of the Indictment (Penal Law § 70.30[1][e][vii][A]).").

In sum, Pabon has not shown that the state court's denial of his ineffective assistance of counsel claim was either contrary to or an unreasonable application of, clearly established Federal law, or that it was based on an unreasonable determination of the facts in light of the evidence presented. *See* 28 U.S.C. § 2244(d). Consequently, Pabon's habeas petition is denied.

CONCLUSION

The application under 28 U.S.C. § 2254 is denied. Pursuant to 28 U.S.C. § 2253, the Court declines to issue a certificate of appealability, since Pabon has not made a substantial showing of the denial of a constitutional right. The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure. The Clerk of the Court is directed to close this action.

So Ordered.

Dated: Rochester, New York
       July 26, 2023

ENTER:

*Charles J. Siragusa*
CHARLES J. SIRAGUSA
United States District Judge